# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70928-3-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ALEXANDER C. ARNOLD, | ) | |
| Appellant. | ) | FILED: March 23, 2015 |

TRICKEY, J. — Alexander Arnold challenges his conviction for first degree robbery, contending that the trial court erred when it instructed the jury on an uncharged means of committing the crime. Because the information charged all three alternative means contained in RCW 9A.56.200(1), the instruction was proper and we affirm Arnold's conviction. However, we remand for resentencing for the trial court to conduct the statutorily-required inquiry regarding Arnold's ability to pay discretionary legal financial obligations.

## FACTS

At approximately 11:00 p.m. on July 2, 2013, Adrianna McDowell stopped at a gas station in rural Whatcom County to put gas in her truck. As McDowell bent to gather some garbage from the floorboard area, Arnold forcefully grabbed her around the neck from behind and threw her to the ground. McDowell testified that Arnold stood over her holding a knife in his right hand, which she described as "a foot long" with a "thick black handle" and a "very jagged edge."[1] Arnold told McDowell to be quiet and asked where her money was. McDowell motioned towards her truck, got up, removed

[1] Report of Proceeding (RP) (Sept. 10, 2013) at 42.

$64.00 from her purse, and gave it to Arnold. Arnold also asked for McDowell's cell phone, which she gave him. Arnold then told McDowell to get in her truck, drive away and not look back, or he would kill her. McDowell drove to the next gas station and called 911. McDowell's jaw was painful and bruised where Arnold had grabbed her.

Law enforcement officers "pinged" McDowell's cell phone to a house Arnold shared with his aunt and uncle.[2] Arnold admitted taking McDowell's cell phone and money, though claimed he had received only $4.00. He denied having a knife. Officers searched Arnold's room and found McDowell's cell phone and $4.00 in cash. They did not find a knife matching McDowell's description but did locate a Leatherman multi-tool with a black handle and a small knife blade in Arnold's backpack. Arnold admitted he had the Leatherman with him at the time of the offense.

On July 8, the State charged Arnold with one count of first degree robbery as follows:

> I . . . Deputy Prosecuting Attorney in and for Whatcom County . . . by this information do accuse **ALEXANDER C. ARNOLD** with the crime(s) of **ROBBERY IN THE FIRST DEGREE WHILE ARMED WITH A DEADLY WEAPON**, committed as follows:
>
> then and there being in Whatcom County, Washington,
>
> **ROBBERY IN THE FIRST DEGREE WHILE ARMED WITH A DEADLY WEAPON**
> That on or about the 3rd[3] day of July, 2013, the said defendant, ALEXANDER C. ARNOLD, then and there being in said county and state, with intent to commit theft, did unlawfully take personal property that the Defendant did not own from the person or in the presence of Adriana McDowell, against such person's will, by use or threatened use of immediate force, violence, or fear of injury to said person or the property

---

[2] RP (Sept. 10, 2013) at 76.
[3] The State later amended the information to change the date of the offense from July 3 to July 2. In all other respects the language of the charging document remained the same.

of said person or the person or property of another, and in the commission of said crime and in immediate flight therefore, the Defendant was armed with a deadly weapon and/or displayed what appeared to be a firearm or other deadly weapon and/or inflicted bodily injury upon Adriana McDowell; in violation of RCW 9A.56.200(1)(a)(i) and (ii), and RCW 9A.56.190 and RCW 9.94A.533.[4]

Over Arnold's objection, the trial court instructed the jury on the elements of first degree robbery as follows:

To convict the defendant of the crime of Robbery in the First Degree, each of the following six elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about [the] 2nd day of July, 2013, the defendant unlawfully took personal property from the person or in the presence of another;

(2) That the defendant intended to commit theft of the property;

(3) That the taking was against the person's will by the defendant's use or threatened use of immediate force, violence, or fear of injury to that person or to that person's property or to the person or property of another;

(4) That force or fear was used by the defendant to obtain or retain possession of the property or to prevent or overcome resistance to the taking or to prevent knowledge of the taking;

(5)(a) That in the commission of these acts or in immediate flight therefrom the defendant was armed with a deadly weapon or
(b) That in the commission of these acts or in immediate flight therefrom the defendant displayed what appeared to be a firearm or other deadly weapon; or
(c) That in the commission of these acts or in immediate flight therefrom the defendant inflicted bodily injury; and

(6) That any of these occurred in the State of Washington.[5]

Arnold objected to the jury being instructed as to the "bodily injury" alternative means, arguing that the information did not put him on notice that the State was

---

[4] Clerk's Papers (CP) at 2-3.
[5] CP at 32.

charging this means. The jury found Arnold guilty of first degree robbery but returned a special verdict finding that Arnold was not armed with a deadly weapon at the time of the crime.

At sentencing the trial court imposed legal financial obligations including a $250.00 jury demand fee and $600.00 in court-appointed attorney fees. Neither party made a presentation addressing Arnold's ability or likely future ability to pay these obligations, and the trial court did not conduct an on-the-record inquiry. The only mention of legal financial obligations at the sentencing hearing was as follows:

> [DEFENSE COUNSEL]: Your Honor, the state is asking for $2,700 for court appointed attorneys fees. We would ask that be reduced to $600.
>
> THE COURT: What's the standard amount for trial?
>
> [DEFENSE COUNSEL]: I have no idea or even how to find it.
>
> THE COURT: How did you come up with the 2700?
>
> [DEPUTY PROSECUTOR]: Your Honor, I will tell you, it's something that – well, the staff puts these together, and frankly, I don't know the –
>
> THE COURT: The basis of the number?
>
> [DEPUTY PROSECUTOR]: Right, I don't.
>
> THE COURT: Without a basis, I'll set it at $600.
>
> [DEFENSE COUNSEL]: Thank you, Your Honor.[6]

Arnold did not object to the imposition of legal financial obligations. The judgment and sentence contained the following boilerplate language:

> LEGAL FINANCIAL OBLIGATIONS/RESTITUTION. The court has considered the total amount owing, the defendant's past, present and future ability to pay legal financial obligations, including defendant's

---

[6] RP (Sept. 17, 2013) at 10-11.

financial resources and the likelihood that the defendant's status will change.[7]

Arnold appeals.

## ANALYSIS

### Uncharged Means

Arnold claims that his conviction must be reversed because the jury was instructed on an uncharged alternative means of committing first degree robbery. We disagree.

A criminal defendant must be informed of the charges against him or her, including the manner of committing the crime. In re Personal Restraint of Brockie, 178 Wn.2d 532, 536, 309 P.3d 498 (2013). When an offense may be committed by alternative means, it is error to instruct the jury on a means that was not charged in the information, even if that means is supported by the evidence at trial. Brockie, 178 Wn.2d at 536. Such an instruction is presumed prejudicial unless the State can demonstrate that the error was harmless. Brockie, 178 Wn.2d at 536.

RCW 9A.56.200(1)(a) provides that a person is guilty of first degree robbery if, "[i]n the commission of a robbery or of immediate flight therefrom, he or she: (i) [i]s armed with a deadly weapon; or (ii) [d]isplays what appears to be a firearm or other deadly weapon; or (iii) Inflicts bodily injury." Subsections (i), (ii) and (iii) represent three alternative means of committing first degree robbery.

Here, the trial court did not instruct the jury on an uncharged means. The information charged all three alternative means contained in RCW 9A.56.200(1) by stating that Arnold "was armed with a deadly weapon and/or displayed what appeared

---

[7] CP at 47.

5

to be a firearm or other deadly weapon and/or inflicted bodily injury upon Adriana McDowell."[8] It is true, as Arnold points out, that the information included the statutory citations for only two of the alternative means, subsections (i) and (ii). But the essential elements of the crime are present, despite the incorrect citation to the statute. "Error in the citation or its omission shall not be ground for dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to the defendant's prejudice." CrR 2.1(a)(1); see also State v. Vangerpen, 125 Wn.2d 782, 888 P.2d 1177 (1995). Here, Arnold fails to demonstrate he was prejudiced by the error. The record is clear that Arnold was aware the State planned to prove that McDowell was injured. Discovery provided to Arnold prior to trial included photographs of McDowell's bruising. In addition, while arguing pretrial motions, defense counsel stated: "The [S]tate has indicated that they are going to try and show that this is a robbery in the first because she was injured."[9] Finally, defense counsel thoroughly cross-examined McDowell about the extent of her injuries, confirming she neither sought medical treatment nor was taken to the hospital. Arnold does not show how the charging document's citation error hindered his ability to present a defense.

*Legal Financial Obligations*

Arnold argues that the trial court erred in imposing discretionary legal financial obligations without considering his ability to pay. Based on our Supreme Court's recent decision in State v. Blazina, No. 89028-5 (Wash. March 12, 2015), which held that "RCW 10.01.160(3) requires *the record to reflect* that the sentencing judge made an

---

[8] CP at 6-7
[9] RP (Sept. 10, 2013) at 8.

individualized inquiry into the defendant's current and future ability to pay" before a court may impose legal financial obligations, we agree.  Blazina, No. 89028-5, slip op. at 12 (emphasis added).  We remand for resentencing with instructions for the trial court to conduct an on-the-record inquiry consistent with Blazina.

Affirmed in part and remanded for resentencing.

Trickey, J

WE CONCUR: